IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DERRICK TOOMER,
        Plaintiff,

v.                                   CIVIL ACTION NO. DKC-13-0614

WARDEN, et al.,
        Defendants.

## MEMORANDUM OPINION

Pending are Motions to Dismiss or for Summary Judgment filed by Defendants J. Michael Stouffer, the Department of Public Safety and Correctional Services (DPSCS),[1] and Wexford Medical Health Care Provider (Wexford). ECF Nos. 23 & 41. Plaintiff has responded.[2] ECF Nos. 45 & 50. Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, the dispositive motions will be granted.

---

[1] The dispositive motion filed by DPSCS and Stouffer has not been formally filed on behalf of Sharon Baucom, Director of Prison Health Care for DPSCS. This appears to be an oversight. For the reasons, that follow, Baucom is entitled to dismissal from this case.

Plaintiff filed a Motion for Clarity (ECF No. 30) wherein he indicated Wexford was not a proper party to these proceedings and sought to have Correctional Medical Services substituted as the proper Defendant. Wexford filed its consent to the voluntary dismissal. ECF No. 31. Thereafter, Plaintiff filed second and third "Motions for Clarity" (ECF Nos. 33 & 36) indicating that he understood Wexford would have been responsible for approving rehabilitation services and therefore wished to withdraw the previously filed voluntary dismissal. In light of the foregoing, the Motion for Clarity will be granted in part and denied in part. The Clerk shall be directed to amend the docket to reflect that Corizon Health Inc., formerly known as Correctional Medical Services, is named as an additional Defendant. A separate service order shall be directed to counsel for Corizon. To the extent Plaintiff sought voluntarily dismissal of Wexford the motion will be denied.

[2] Plaintiff has also filed a Motion for Limited Discovery under Federal Rule of Civil Procedure 56(d). ECF No. 49. The Motion shall be denied. Plaintiff has failed to state with any particularity the basis for his request. He offers no explanation as to how any of the requested documents would aid his effort to counter the pending dispositive motions other than to state in general terms that he cannot properly oppose the summary judgment motion without the requested documents, nor can he present essential facts. He has failed to demonstrate that the material requested is essential to his opposition as required under Fed. R. Civ. P. 56(d). It is noted that Wexford has provided Plaintiff's medical record as an exhibit in support of its Motion for Summary Judgment. Plaintiff has failed to articulate how provision of the contracts between DPSCS and medical contractors would aid his opposition to the pending dispositive motions.

## Background

The case was instituted upon receipt of correspondence from Plaintiff Derrick Toomer, then a pretrial detainee held at the North Branch Correctional institution. Plaintiff complained that as a pretrial detainee he had no access to administrative remedies and generally alleged that he had been denied medical care while housed at the Baltimore County Detention Center. ECF No. 1. Thereafter Plaintiff filed a court-directed amended complaint naming Sharon Baucom, the Department of Public Safety and Correctional Services, M. Stouffer, and "Wexford Medical Health Care Provider" as Defendants. ECF No. 7.

Plaintiff alleged that the named Defendants refused him medical care for injuries he sustained after he was stabbed in the hand in April of 2010. Plaintiff states that after undergoing surgery he was provided a half-cast/half-splint to immobilize his hand and given discharge instructions directing he return for follow up in 7-10 days. Plaintiff states that he wore the splint for three months rather than for the 7-10 days as directed. He indicates he was not provided rehabilitation for his hand and forearm for 20 months resulting in his arm "heal[ing]wrong" and necessitating the daily use of Neurontin due to the nerve damage and pain. Plaintiff also claims that he has lost strength in two of his fingers and suffers from nightmares when his arm hurts because "it feels like I'm right back to BCDC fighting for my life."[3] *Id*.

---

[3] Plaintiff also filed correspondence with the court stating he was in fear for his life because his son was accused of being involved in a prison murder of a member of the BGF gang and Plaintiff was convicted of killing a high ranking member of the Bloods. Plaintiff stated he contacted IIU but received no response. ECF Nos. 9 & 11. As injunctive relief he requested he not be returned to BCDC for processing after his trial. Counsel was directed to file a response. ECF No. 13. Defendants Warden and DPSCS responded indicating that Plaintiff would not be transferred to BCDC for his intake processing and classification. Rather, the processing would be done in the region where Plaintiff was housed. ECF No. 19. It appears that Plaintiff has subsequently been reclassified and was not returned to BCDC. *See* ECF No. 35, advising of new DOC identification number. As such, the request for injunctive relief shall be denied as moot.

Plaintiff's uncontroverted medical records demonstrate that on April 30, 2010, he was transported to Union Memorial Hospital for evaluation and treatment of a stab wound to his right forearm. ECF No. 41, Ex. 2, p. 490-94. At the time of Plaintiff's injury, surgery and immediate post-surgical care, Defendant Wexford solely provided onsite utilization review management services for off-site medical services, hospitalizations, and other specialized medical or clinical services provided to inmates in the custody of the DPSCS. ECF No. 41 and Affidavit. Wexford continued its role of utilization review but also undertook responsibility for primary patient care of inmates in the custody of DPSCS on July 1, 2012. *Id.*

Plaintiff underwent surgery to repair the laceration and tendon injury to the forearm. No pre-authorization of the surgery was required by Wexford due to the emergent nature of the injury. Thereafter, on October 30, 2011, Wexford received a request from Colin Ottey, M.D. for a physical therapy consultation after Plaintiff complained of decreased sensation and difficulty holding objects due to weakness in the 4th and 5th digits of his hand. *Id.,* Ex. 1 & 2, p. 18-19, 24-25, 29-30. Dr. Ottey associated the complaints with neuropathy arising from Plaintiff's stab injury. The request for physical therapy was approved by Wexford on November 1, 2011. *Id.,* Ex. A. Plaintiff received physical therapy to his right hand on November 29 and December 6, 8, 13, 15, 22, and 27, 2011. *Id.,* Ex. 2 p. 32-33, 37-45.

On December 29, 2011, Wexford received a request for additional physical therapy sessions. The request was approved the same day and Plaintiff was provided additional physical therapy throughout January. *Id.,* Ex. 2, pp. 46-51. On January 24, 2012, Plaintiff's physical therapist noted Plaintiff reported improvement in the functional use of his hand. Examination revealed functional grip strength and full range of motion within normal limits in his 4th and 5th fingers. Additionally, it was noted that Plaintiff demonstrated a positive tinel sign (a tingling

3

sensation felt in the distal portion of a limb upon percussion of the skin over a regenerating nerve in the limb) over his surgical incision which was noted to be related to neuropathy. The therapist indicated Plaintiff had reached optimum benefit from physical therapy and Plaintiff was discharged. *Id*.

Plaintiff was seen by the physical therapist for recertification on March 13, 2012. At that time he indicated he continued to have problems with his right forearm. The physical therapist noted Plaintiff's complaints were related to neuropathy of the right forearm and recommended an additional physical therapy session. There is no record, however, that a request for physical therapy was presented to Wexford for review. *Id*., Ex. 1, Ex. 2 p. 53-54.

On April 4, 2012, Plaintiff was seen by Dr. Ottey in the chronic care clinic for his diabetes. Dr. Ottey issued no consult request for further physical therapy. *Id.*, Ex. 2. p. 56-58.

Physician's Assistant Katie Winner examined Plaintiff on April 25, 2012. Plaintiff complained of arm pain for a year at a 9 out of 10 on the pain scale and requested an increase in his dose of Neurontin. Winner noted Plaintiff's right forearm was tender to palpation with decreased range of motion in the 4th and 5th digits and his grip strength was 4/5. Winner ordered application of cold and warm compresses and ice as needed to his arm. She also ordered front handcuffing and noted that the pharmacist would be consulted regarding Plaintiff's pain management. No consult for further physical therapy was generated by Winner. *Id*., p. 61-62.

Plaintiff was seen by Dr. Ottey on May 12, 2012, and complained of an increase in pain in the arm and hand. *Id.*, p. 64-65. Ottey noted tenderness in the right forearm as well as Plaintiff's history of nerve injury. He ordered an increase in Plaintiff's Neurontin dose and recommended no weights or heavy lifting and for Plaintiff to return for follow up if there was no improvement in thirty days. *Id*., p. 64-65.

On July 1, 2012, Wexford became the medical contractor for DPSCS assuming the contract for the delivery of primary medical care and continuing its role as utilization review manager. *Id*., Ex. 1. At that time Plaintiff was receiving Neurontin, Naproxen and Triamcinolone Acetonide for his right arm. *Id*., p. 82.

On August 14, 2012, Plaintiff submitted a sick call slip seeking a refill of his Triamcinolone Acetonide prescription. The medication was refilled. He submitted sick call slips on September 2 and 23, 2012 regarding his medication regimen and complained that he had reinjured his arm. *Id*., Ex. 2, p. 373-74. On September 6, 2012, he was seen by Aliy Yahya, M.D. Plaintiff complained of pain and tingling in his right forearm and reported pain of 3 out of 10. *Id*., p. 96-98. Examination revealed his old stab wound and surgery scar but no other abnormalities were observed. Dr. Yahya noted he would not prescribe any medication for Plaintiff's arm at that time. *Id*. p. 373-74.

Plaintiff submitted sick call sips on September 13 and 16, 2012, concerning renewal of his medication. On September 18, 2012, his Neurontin prescription was renewed by Dr. Ottey. *Id*., p. 377, 379, 103.

Dr. Ottey again evaluated Plaintiff on September 25, 2012, in response to a sick call slip submitted on September 23, 2012, inquiring about his medication. *Id*., p. 105, 382. Plaintiff reported he recently fell and reinjured his right arm when exiting a van, causing increased pain, numbness and tingling. *Id*. p. 105-106. Dr. Ottey examined Plaintiff's arm and noted tenderness but no other abnormality. He recommended no changes to Plaintiff's pain medication which still included Neurontin and Naproxyn. *Id*.

From September of 2012 to the filing of Plaintiff's complaint in July of 2013, Plaintiff sought and received medical care for health issues unrelated to his right arm. *Id*., Ex. 2, p. 108-

5

275, 383-458. The only intervention he sought during this time regarding his arm was renewal of pain medication which was provided. *Id*., p. 436 and 455.

## Standard of Review

A. Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B. Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the

burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

A.      Sovereign Immunity

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Penhurst State School and Hospital v. Halderman*, 465 U. S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. State Gov't Code Ann., § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, Plaintiff's complaint against the Department of Public Safety and Correctional Services, an agency within the State of Maryland, is barred by the Eleventh Amendment.

B.      Medical Claim

The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992), *citing Martin v. Gentile*, 849 F. 2d 863, 870 (4th Cir. 1988).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute

and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown* 240 F. 3d at 390; citing

9

*Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference". *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge). Mere disagreement with a prescribed course of treatment is insufficient to establish an Eighth Amendment claim of deliberate indifference. *See Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

C. Supervisory Liability

The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal

link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Commissioner Stouffer avers that he never made any decision regarding the provision of health care or transportation for health care for Plaintiff. ECF No. 23, Ex. B. Neither Dr. Sharon Baucom, Medical Director for the Division of Corrections, nor Stouffer were responsible for providing or refusing medical treatment for Plaintiff. At the time of the alleged denial of medical care, all decisions regarding medical care were the sole responsibility of Correctional Medical Services, the private health care contractor retained by DPSCS to provide medical services to inmates incarcerated at BCDC. *Id.*, Exs. A & B. Plaintiff has pointed to no action or inaction on the part of J. Michael Stouffer or Dr. Sharon Baucom that resulted in a constitutional injury, and accordingly, his claims against them shall be dismissed.

At the time of Plaintiff's injury, surgery and immediate post-surgical care, Defendant Wexford Health Sources, Inc. ("Wexford") solely provided onsite utilization review management services for off-site medical services, hospitalizations, and other specialized medical or clinical services provided to inmates in the custody of the Maryland Department of Public Safety and Correctional Services (DPSCS). ECF No. 41 and Affidavit. Plaintiff's claims do not concern the recommendation of any specialty care other than referral for physical therapy which was approved by Wexford each time the request was presented to them.

Plaintiff's claims focus on the delivery of primary health care after his off-site surgical procedure: the failure to return him for follow-up care after the surgery, the delay in requesting physical therapy, and the failure to advise him on the proper use of his cast/splint. These claims are properly asserted against the direct health care provider during the time at issue, namely CMS and its employees.

11

When Wexford took over on-site provision of health care on July 1, 2012, the record evidence demonstrates that Plaintiff was provided adequate medical care by Wexford. He was promptly seen and properly evaluated by medical staff and his medications were continued. Mere disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. Plaintiff has failed to submit any evidence to support his claim that Wexford provided constitutionally inadequate medical care, and as such Wexford is entitled to summary judgment.

## Conclusion

The dispositive motions filed on behalf of DPSCS, Stouffer, Baucom, and Wexford's will be granted. Counsel for Corizon/Correctional Medical Services shall be directed to respond to the complaint. Plaintiff shall be granted fourteen days from the date of this Memorandum Opinion to name any additional medical providers as Defendants. A separate Order follow.

Date: February 10, 2014 _____/s/_____
DEBORAH K. CHASANOW
United States District Judge